(No. 54762 ▮▮▮▮▮▮

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. CLINT DALTON, Appellee.

*Opinion filed April 16, 1982.*

Tyrone C. Fahner, Attorney General, of Springfield, and John A. Barra, State's Attorney, of Peoria (Herbert Lee B. Caplan, Melbourne A. Noel, Jr., Jack Donatelli, and Neal B. Goodfriend, Assistant Attorneys General, of Chicago, and John X. Breslin and Gary F. Gnidovec, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Verlin R. F. Meinz and Peter A. Carusona, Assistant Defenders, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

A Peoria County circuit court jury found defendant, Clint Dalton, guilty on two of three counts of indecent liberties with a child, and he was sentenced to two concurrent four-year terms of imprisonment. The appellate court reversed, holding that the State had failed to establish an essential element of the crime: defendant's age. (93 Ill. App. 3d 264.) That holding was based upon two independent grounds: (1) the only evidence of his age was a statement made by defendant to an officer investigating the offense, which the court held was taken in violation of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602; and (2) defendant's admission of his age was not corroborated by anything in the record as required by *Wistrand v. People* (1904), 213 Ill. 72. We granted the State's petition for leave to appeal.

The offense of indecent liberties with a child is defined, in relevant part, by section 11–4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 11–4(a)):

"Any person of the age of 17 years and upwards commits indecent liberties with a child when he or she performs or submits to any of the following acts with a child under the age of 16:
\*\*\*

(2) Any act of deviate sexual conduct; \*\*\*."

Proof of defendant's age was offered in the form of testimony given by Officer Martha Childers, who worked in the juvenile division of the Peoria police force. She testified that she first learned of the offense in an October 1978 conversation with defendant's three younger sisters, the victims of this crime, whom the court had earlier removed from the family home and subsequently placed in foster homes. In that conversation the sisters indicated that defendant forced them to submit to various sexual acts. (At the time of trial one girl was 10 years old and her younger twin sisters were 8 years old.) Defendant was arrested on these charges the following February and interviewed by Officer Childers three days later. Their conversation lasted about an hour, during which defendant gave his date of birth in response to her question.

It is clear from the testimony of both the officer and defendant that at some point during this conversation defendant was informed of his *Miranda* rights and that he said he would not discuss the charges without first consulting his attorney. However, he also expressly indicated his willingness to talk about anything else, and he subsequently brought up the subject of the pending charges.

While we do not believe the timing of the *Miranda* warning is controlling, the appellate court erred in holding that Officer Childers' inquiry regarding defendant's age preceded the warnings. She originally testified that the warning was given prior to asking defendant's age. On cross-examination, however, she acknowledged uncertainty whether she asked him his date of birth before or after she read defendant the *Miranda* warnings. Defendant

testified, on both direct examination and cross-examination, that the first thing the officer did when he entered the room and sat down was to read him his rights. This testimony leaves no doubt that any statements made by defendant followed the warning. The primary question here, in our judgment, is not whether the warning preceded or followed the question; rather, it is whether *Miranda* prohibits inquiry into certain basic identifying data concerning a defendant, where the response, as here, might establish an element of the crime with which he is charged. The decisions in other jurisdictions which have considered the question support the conclusion that such inquiry is not barred. (*Pulliam v. State* (1976), 264 Ind. 381, 345 N.E.2d 229 (defendants stated their age at booking prior to *Miranda* warnings; age was an element of the offense); *State v. Rassmussen* (1969), 92 Idaho 731, 449 P.2d 837 (defendant, charged with procurement, stated at booking, after talking to his attorney, that his occupation was "pimp"); *People v. Hernandez* (1968), 263 Cal. App. 2d 242, 69 Cal. Rptr. 448 (defendant gave his date of birth at booking; age was an element of the offense).) Numerous other cases have held that *Miranda* does not prohibit inquiry into background data even though that information is later used to gather more evidence against a defendant or is itself used as supporting evidence of defendant's guilt. (See, *e.g.*, *United States v. Grant* (4th Cir. 1977), 549 F.2d 942 (spontaneous admission of guilt during booking); *United States v. Prewitt* (7th Cir. 1977), 553 F.2d 1082 (defendant's "alias" taken during booking used to gather more evidence); *United States ex rel. Hines v. LaVallee* (2d Cir. 1975), 521 F.2d 1109 (defendant responded to prebooking questions regarding marital status and children which proved to be incriminating); *United States v. Menichino* (5th Cir. 1974), 497 F.2d 935 (defendant volunteered incriminating statements during, but not connected with, booking

process); *United States v. La Monica* (9th Cir. 1972), 472 F.2d 580 (defendant made incriminating statement while identifying a receipt during personal effects inventory after arrest); *Toohey v. United States* (9th Cir. 1968), 404 F.2d 907 (FBI used defendant's address as a starting point in search of witnesses); *Farley v. United States* (5th Cir. 1967), 381 F.2d 357 (defendant's address was used to impeach his explanation of coincidence that he was found at the scene of the crime); *People v. Fognini* (1970), 47 Ill. 2d 150 (no *Miranda* prohibition of obtaining defendant's alias during booking); *People v. Rivera* (1970), 26 N.Y.2d 304, 258 N.E.2d 699, 310 N.Y.S.2d 287 (defendant's statement of false address given at arrest used to impeach); *Clarke v. State* (1968), 3 Md. App. 447, 240 A.2d 291, (defendant's address used to uncover stolen goods); *Propst v. State* (1968), 5 Md. App. 36, 245 A.2d 88 (defendant's address used to establish control of premises); but see *Proctor v. United States* (D.C. Cir. 1968), 404 F.2d 819 (defendant's statements about his employment status, made during booking, were inadmissible under *Miranda,* to rebut his proferred alibi).) We accordingly hold that under these circumstances Officer Childers' inquiry about defendant's date of birth was not proscribed by *Miranda* and, consequently, defendant's response was properly admitted.

Defendant argues, however, that age is a necessary element of the *corpus delicti* of indecent liberties with a child and therefore the State must produce corroborating evidence *aliunde* his admission. (*Wistrand v. People* (1904), 213 Ill. 72; *People v. Rogers* (1953), 415 Ill. 343.) In both *Wistrand* and *Rogers* the defendants were convicted of rape and the State relied solely on each defendant's extra-judicial statement of his age to prove that element of the crime. This court reversed both convictions on the basis that the *corpus delicti* cannot be established by the confession of the defendant alone. In *Wistrand* the court held that age was essential to the *corpus delicti* of rape,

for if the defendant was under 17 years of age there was no crime, and, therefore, defendant's statement of his age must be corroborated. The court held that the jury's observation of the defendant, who was 44 years old, was insufficient corroboration. 213 Ill. 72, 79-80.

The State invites us to abandon the *Wistrand* rule in this case, arguing that one's admission of his age is an inherently reliable statement and is therefore admissible to establish *corpus delicti* without corroboration. The purpose of the corroboration rule, argues the State, is to provide some indication that the confession or admission is reliable and where there is no question of reliability, as in this case where a defendant has stated his date of birth, the rule is inapplicable. Alternatively, the State argues that if corroboration is necessary, there is sufficient corroborating evidence in the record. We note that defendant's statement of his age is corroborated by his testimony at a February 26, 1980, bail hearing and by the booking record, neither of which, however, was before the jury.

The State's argument as to the strength of the "corroborative" testimony is somewhat overdone. While corroborative evidence need not establish *corpus delicti* beyond a reasonable doubt (*People v. Willingham* (1982), 89 Ill. 2d 352, 359; *People v. Perfecto* (1962), 26 Ill. 2d 228, 229), it must be more probative than that offered here. The strongest evidence that the State suggests corroborates defendant's age is his prior conviction of misdemeanor theft, which was offered to impeach his credibility. However, this conviction was obtained several months after the period in which the indictment alleged that the crimes occurred. It is not probative of defendant's age during the period for which he was indicted. Nor are references in the record to defendant as "Mr. Dalton," "this young man," or "an adult compared to other witnesses" particularly helpful to the State.

However, we believe there is merit in the State's

argument that the rule of *Wistrand* and *Rogers* should be modified insofar as it holds that age is subject to the corroboration requirement. Rather than abandon the rule entirely, we would have been inclined in those cases to hold simply that the jury's observation of defendants was sufficient corroboration. However, unlike the defendants in *Wistrand* and *Rogers*, who were considerably over the statutory age, defendant Dalton was 20 years old at the time of trial and sufficiently close to the statutory age that we think observation could be unreliable. Our conclusion is that age, while perhaps technically an element of the *corpus delicti* of indecent liberties, is not subject to the same infirmities when admitted to by a defendant as are more subjective admissions. Consequently, we do not believe that the purpose of the corroboration rule would be served by applying it in these circumstances.

The corroboration rule requires that the *corpus delicti* be proved by some evidence *aliunde* admission of a defendant. Proof of *corpus delicti* requires both proof of injury or loss, as well as proof of criminal agency. (7 Wigmore, Evidence sec. 2072 (rev. ed. 1978); McCormick, Evidence sec. 158, at 347 (2d ed. 1972).) The corroboration rule was the result of an historical mistrust of extrajudicial confessions. Two reasons for this mistrust have commonly been cited: confessions are unreliable if coerced; and, for various psychological reasons persons "confess" to crimes that either have never occurred or for which they are not legally responsible. (See generally 7 Wigmore, Evidence secs. 2070 through 2072 (rev. ed. 1978); McCormick, Evidence sec. 158 (2d ed. 1972); *Developments in the Law—Confessions*, 79 Harv. L. Rev. 938, 1072-84 (1966); Note, *Proof of the Corpus Delicti Aliunde: the Defendant's Confession*, 103 U. Pa. L. Rev. 638 (1955); see also *Smith v. United States* (1954), 348 U.S. 147, 99 L. Ed. 192, 75 S. Ct. 194.) Although the rule has been criticized and its elimination urged (7 Wigmore

sec. 2070, at 510 (rev. ed 1978); *Developments in the Law—Confessions,* 79 Harv. L. Rev. 938, 1084; *Daeche v. United States* (2d Cir. 1918), 250 F. 566, 571 (opinion by Judge Learned Hand)), we remain unconvinced that it should be completely abandoned (*People v. Willingham* (1982), 89 Ill. 2d 352, 358-59).

However, where the rule may serve to guard against a possible miscarriage of justice in the instance of a forced confession or a "confession" to a crime that has not been committed, it does not appear to us that this purpose is served by requiring corroboration of a defendant's admission of his age given in circumstances arousing no doubt of its reliability. An admission of one's birth date is not subject to the peculiar perceptions or recollections of a defendant who is under the psychological pressures of an arrest or indictment. (See *Smith v. United States* (1954), 348 U.S. 147, 153, 99 L. Ed. 192, 198-99, 75 S. Ct. 194, 197.) It appears to be inherently more reliable than a statement of what one did, or saw, or heard, or thought because it is a statement of an immutable characteristic. In this regard it is much more similar to personal characteristics such as fingerprints, handwriting, blood type or voice pattern. Unlike these latter characteristics, which might tend to prove an element of a crime, in this case, the characteristic itself, without more, is an element of the crime. We do not believe that this distinction requires application of the corroboration rule. Accordingly we hold that the statement was admissible without corroboration. Our holdings in *Wistrand* and *Rogers,* to the extent that they are contrary to this opinion, are overruled.

Defendant raises two other grounds for reversal which were presented to, but not considered by, the appellate court. Since they have been briefed here by both the defendant and the State, in the interest of judicial economy we will address them.

Defendant argues that the trial court erred in denying his motion to suppress another statement made by defendant to Officer Childers in the course of his conversation with her. Officer Childers testified that after defendant told her he would not discuss the charges against him without first talking to his attorney, she did not inquire further about them. At some point during their conversation, defendant returned to the subject, without prompting from her, and asked the specific nature of the charges. She told him. She testified that he then said that he would sometimes tell his sisters to "suck his dick" if he was angry with them, but that he meant it only as a request to leave him alone. Defendant argues that the statement is inadmissible because he had invoked his *Miranda* right to cut off questioning on these charges.

The trial court's ruling on the motion indicates that it found the statement was voluntarily made because testimony indicated that defendant had initiated the inquiry about the charges. Defendant does not contest the finding that he had initiated that part of the conversation but only that the State had not met its heavy burden of showing the defendant's waiver of his right to silence. (*People v. Washington* (1977), 68 Ill. 2d 186, *cert. denied* (1978), 435 U.S. 981, 56 L. Ed. 2d 72, 98 S. Ct. 1631.) The question of voluntariness is to be determined by the trial court, and its ruling will not be disturbed unless it is contrary to the manifest weight of the evidence. (*People v. Aldridge* (1980), 79 Ill. 2d 87, 93; *People v. Medina* (1978), 71 Ill. 2d 254, 258.) The trial court's finding that defendant had initiated the conversation reopening this topic is not disputed, and its finding that the ensuing statement was voluntarily made is clearly not against the manifest weight of the evidence.

Defendant also contends that the trial court failed to exercise discretion in denying his motion to suppress the evidence of his prior conviction for misdemeanor theft

which was introduced to impeach his credibility. (See *People v. Malone* (1979), 78 Ill. 2d 34.) The trial court, after hearing arguments on the motion and reading *Malone,* ruled that "I am bound by the ruling in the case of [*Malone*] and under those circumstances, the motion *in limine* is denied." Defendant argues that this statement indicates that the trial judge did not exercise his discretion in determining whether the probative value of the conviction outweighed its prejudicial effect. This contention is belied by the fact that the court heard oral argument on the motion and apparently read the *Malone* decision at that time. The judge was in fact bound by *Malone,* and we cannot, on this record, attribute to him a misunderstanding of the nature of his ruling on the issue being argued before him.

Accordingly, we reverse the judgment of the appellate court and affirm the judgment of the circuit court of Peoria County.

*Appellate court reversed;*
*circuit court affirmed.*