THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SAMUEL RICHMOND, Defendant-Appellant.

First District (3rd Division)   No. 1—01—1656

Opinion filed May 28, 2003.—Rehearing denied July 2, 2003.

HOFFMAN, J., specially concurring.

Michael J. Pelletier and Sarah Curry, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

Among the matters to be decided in this predatory criminal sexual assault case is the State's suggestion that we abandon the requirement that the occurrence of a crime cannot be established solely by a defendant's uncorroborated confession—the *corpus delicti* rule.

The issue arises from a jury verdict finding Samuel Richmond

guilty of two counts of predatory criminal sexual assault of a six-year-old female, R.J. It has impact on one of the counts, where Richmond received a sentence of 60 years. His sentence on the other count, a consecutive term of 30 years, is not affected by our view of the viability of the *corpus delicti* rule.

Richmond contends: (1) his conviction for one of the counts should be reversed because it was based solely on his confession, contrary to the rule of *corpus delicti*; (2) he was denied his due process right to a fair trial where the State gave the entire opening statement from the perspective of the victim; (3) his rights to trial by jury and due process were violated by errors in several jury instructions; (4) he was subjected to an improper double enhancement where the trial court sentenced him to an enhanced term of 60 years' imprisonment on one of the convictions based on a factor that was also an element of the crime charged; and (5) the trial court abused its discretion in imposing the sentences.

We reverse one of the convictions and the corresponding 60-year prison term and affirm the remaining conviction and its 30-year prison term. Based on the reversal of the conviction and sentence, we need not address Richmond's contention challenging the 60-year sentence.

BACKGROUND

Richmond was indicted for, among other things, two counts of predatory criminal sexual assault under section 12—14.1(a)(1) of the Criminal Code of 1961 (720 ILCS 5/12—14.1(a)(1) (West 1998)). The first count charged contact between R.J.'s anus and Richmond's penis. The second charged contact between R.J.'s vagina and Richmond's penis.

At the trial, R.J. testified that on August 8, 1998, she went to her friend Keyshaunda's apartment to see if she could play. Keyshaunda's uncle, Richmond, answered the door and told R.J. Keyshaunda was not home. R.J. then asked to see the baby, Richmond's nephew.

When R.J. went into the house to see the baby, Richmond pushed her onto the bed, pulled down her shorts, "pulled his thing out," and "freaked" her, which R.J. explained meant that he put his private part in her butt. Richmond then went to the bathroom, and R.J. tried to run away. But Richmond came out of the bathroom and did it again. When Richmond stopped, he told her that if she told her parents, he would do it again. He also gave her some money.

After the incident, R.J. ran home crying and told her mother, Felicia Fox, that Richmond "freaked" her. R.J. said repeatedly "it hurts" and pointed down toward her back. When Fox pulled R.J.'s shorts and pants down, Fox saw what she thought was blood on R.J.'s panties,

and she pulled R.J.'s shorts back up. Fox took R.J. to Keyshaunda's house, where R.J. identified Richmond. Richmond denied doing anything and told Fox he did not touch R.J. Fox and R.J. left the apartment; Fox called 9-1-1. An ambulance arrived and took R.J. and Fox to South Shore Hospital.

At the hospital, Dr. Chandra Anand examined R.J. R.J. appeared distressed and told the doctor Richmond had put his "thing inside my butt." Dr. Anand found a half-moon-shaped tear in R.J.'s anus, which was dilated and was consistent with an unlubricated adult male penis entering into the anus.

While at the hospital, Officer Patricia Watts spoke with R.J. and her mother. Officer Watts then located and arrested Richmond.

After Richmond was taken to the police station, Detective Bradley spoke with him. Bradley advised Richmond of his *Miranda* rights and asked him about the incident. Richmond denied involvement in the incident. When Bradley explained the allegations against him, Richmond admitted involvement and made inculpatory statements. Richmond repeated his statements to Assistant State's Attorney Steven Rosenblum, who reduced the statements to writing. Rosenblum reviewed the statement with Richmond; Bradley, Rosenblum, and Richmond signed the statement.

Richmond's statement was read to the jury. It was consistent with R.J.'s account in nearly all respects, except for one significant difference. In the statement, Richmond said that before he penetrated R.J.'s anus, "he placed his penis on [R.J.]'s vagina and tried to put it in a couple of times," but could not.

Richmond did not testify or present any witnesses on his behalf.

At the close of trial, the jury found Richmond guilty of both counts of predatory criminal sexual assault. After a sentencing hearing, the trial court sentenced Richmond to an extended term of 60 years' imprisonment on the penis-to-vagina count and to 30 years' imprisonment on the penis-to-anus count.

## DECISION

### I. *CORPUS DELICTI*

Richmond contends the evidence was insufficient to support the conviction on the penis-to-vagina count because the only evidence of that crime came from his statement. This, he says, is insufficient because the *corpus delicti* cannot be proven by the defendant's statement alone.

■ When reviewing the sufficiency of the evidence, we will reverse a defendant's conviction only if, viewing the evidence in the light most

favorable to the State, no rational finder of fact could have found the crime to have been proved beyond a reasonable doubt. *People v. Villarreal*, 198 Ill. 2d 209, 231, 761 N.E.2d 1175 (2001). To sustain a conviction, the State must prove (1) the *corpus delicti* (that a crime occurred) and (2) the crime was committed by the person charged. *People v. Cloutier*, 156 Ill. 2d 483, 503, 622 N.E.2d 774 (1993).

■ The *corpus delicti* cannot be proven by a defendant's confession alone. Where the defendant's confession is part of the proof of the *corpus delicti*, the State must provide independent corroborating evidence. *Cloutier*, 156 Ill. 2d at 503. The corroborative evidence does not have to prove *corpus delicti* beyond a reasonable doubt, but must tend to confirm the defendant's confession. *Cloutier*, 156 Ill. 2d at 503.

■ The State urges us to abandon the long-standing *corpus delicti* rule in Illinois because it is inconsistent with the standard of review. We decline.

Our supreme court has repeatedly said independent corroboration is required where the defendant's confession is part of the proof. See, *e.g., Cloutier*, 156 Ill. 2d at 503; *People v. Furby*, 138 Ill. 2d 434, 563 N.E.2d 421 (1990). This requirement arose from "historical mistrust of extrajudicial confessions. Two reasons for this mistrust have commonly been cited: confessions are unreliable if coerced; and, for various psychological reasons, persons 'confess' to crimes that either have never occurred or for which they are not legally responsible." *People v. Dalton*, 91 Ill. 2d 22, 29, 434 N.E.2d 1127 (1982); see also *Furby*, 138 Ill. 2d at 447. Although urged to reject the *corpus delicti* rule, the supreme court refused to abandon it. *Dalton*, 91 Ill. 2d at 29-30. We are bound by this precedent. See *People v. Goebel*, 284 Ill. App. 3d 618, 624, 672 N.E.2d 837 (1996) ("We are obliged to follow the precedents of our supreme court").

■ We now consider whether the evidence presented by the State in this case was sufficient to sustain the penis-to-vagina conviction. The charge at issue was brought under section 12—14.1(a)(1) of the Illinois Criminal Code of 1961:

"(a) The accused commits predatory criminal sexual assault of a child if:

(1) the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed[.]" 720 ILCS 5/12—14.1(a)(1) (West 1998).

"Sexual penetration" is defined in relevant part as:

"any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of

another person, including but not limited to cunnilingus, fellatio or anal penetration." 720 ILCS 5/12—12(f) (West 1998). Under this statute, the State charged contact between Richmond's penis and R.J.'s vagina.

■ Evidence of contact between Richmond's penis and R.J.'s vagina came entirely from Richmond's statement. In fact, the statement's reference to vaginal contact was brief and nonspecific. All the other evidence provided by the State at trial proved only anal penetration. Nothing in the record corroborated the penis-to-vagina portion of Richmond's statement. We also reject the State's contention that mere proximity between R.J.'s vagina and anus tended to prove his penis also came into contact with her vagina. That is pure speculation.

Because the State offered no independent evidence corroborating Richmond's statement about penis-to-vagina contact, the evidence was insufficient to convict Richmond on this count. We reverse this conviction and the 60-year prison sentence. We address Richmond's remaining contentions as they relate only to the conviction based on anal penetration.

## II. OPENING STATEMENT

The State delivered its entire opening statement in the first person from R.J.'s perspective. The State began with, "Hi. My name is RJ, and I'm 8 years old *** I'm going to tell you about something that happened a couple of years ago when I was just a little kid." Not long into the opening statement, the State also said, still in the first person and from R.J.'s perspective, "Now, my State's Attorneys, Miss Roseanne McDonnell and Theo Jamison then, they're going to present this evidence to you today."

Richmond contends the trial court erred in allowing the State to give its opening statement from the first person perspective of R.J. This, Richmond says, allowed the State to improperly bolster the testimony of R.J., causing him substantial prejudice.

■ The State contends Richmond forfeited our review of this issue by not properly preserving it. Although Richmond objected during the opening statement, he did not specifically raise the issue in his posttrial motion.

To preserve an issue for review, a defendant must make *both* a timely objection and *"specifically* include the objection in a post-trial motion." (Emphasis added.) *People v. Nieves,* 193 Ill. 2d 513, 524, 739 N.E.2d 1277 (2000). Here, because Richmond did not specifically raise the issue in his posttrial motion, he did not properly preserve the issue for review. Richmond contends we should review this issue under the doctrine of plain error.

■ We may review an error not properly preserved if we determine that plain error occurred. *People v. Chapman*, 194 Ill. 2d 186, 225, 743 N.E.2d 48 (2000). We must first consider whether any error was made. *Chapman*, 194 Ill. 2d at 226. If we find error, we then consider whether this error was plain error. *Chapman*, 194 Ill. 2d at 226. Plain error may be invoked in two circumstances: (1) where the evidence is closely balanced, and (2) where the error is of such magnitude that there is a "substantial risk that the accused was denied a fair and impartial trial, and remedying the errors is necessary to preserve the integrity of the judicial process." *People v. Vargas*, 174 Ill. 2d 355, 363, 673 N.E.2d 1037 (1996).

■ We turn first to the question of whether any error occurred. The purpose of an opening statement is to advise the trier of fact what the evidence will show. *People v. Foss*, 201 Ill. App. 3d 91, 94, 559 N.E.2d 254 (1990). In a criminal case, the opening statement should describe the facts the State in good faith expects to prove. *Foss*, 201 Ill. App. 3d at 94. The State is allowed great latitude in making the opening statement. *People v. Pasch*, 152 Ill. 2d 133, 184, 604 N.E.2d 294 (1992). We know of no rule that requires it to be dull and passionless.

However, the State, by its remarks, may not improperly bolster a witness's credibility. See *People v. Soto*, 336 Ill. App. 3d 238, 252, 783 N.E.2d 82 (2002). The reason for such a rule is:

> "The State's Attorney represents the People of the State of Illinois in the courtroom. The words he speaks carry the authority of the People and of the State. Thus, the State's Attorney must choose his words carefully so that he does not use that authority to persuade a jury that there is greater authenticity in what he says than in what the defense says. It is the duty solely of the jury to determine the credibility of the witnesses and guilt or innocence of the accused; it is not the privilege of the prosecutor." *People v. Valdery*, 65 Ill. App. 3d 375, 378, 381 N.E.2d 1217 (1978).[1]

■ Although the use of a first person delivery may not be error under other circumstances, in this case it improperly bolstered the credibility of the State's star witness, an eight-year-old. The State delivered R.J.'s version of the facts much more eloquently than R.J. did from the witness stand. Moreover, the State continued to use R.J.'s perspective when discussing evidence that, according to the trial testimony, R.J. was never exposed to. For example, "R.J." told the jury

---

[1]Although the statements made in *Valdery* were made in the context of a prosecution closing argument, the court's reasoning is equally applicable, if not more so, to a prosecution opening statement.

in opening statement about Richmond's confession, even though she was not present when Richmond made the statement.

The State's use of "my State's Attorneys *** they're going to present this evidence to you today" further placed the State in the role of a witness. The State's method of delivery implied the State's Attorneys would personally vouch for the credibility of R.J.'s testimony.

Even though the trial court erred in allowing the State to deliver this improper opening statement, it does not reach the level of plain error. First, the evidence was not closely balanced. The State presented R.J.'s testimony that Richmond penetrated her anus with his penis. Fox also testified R.J. immediately told her about the incident when R.J. got home. R.J.'s account remained constant. Moreover, Dr. Anand testified he observed a tear in R.J.'s anus that was consistent with penetration by a penis. Second, the error did not rise to a magnitude that would deprive Richmond of a fair trial. Because this was not plain error, Richmond forfeited our review by failing to properly preserve the issue for review.

In any case, the verdict will not be disturbed unless the remarks resulted in substantial prejudice to the defendant; that is, absent those remarks the verdict would have been different. *Pasch*, 152 Ill. 2d at 185. Richmond was not substantially prejudiced by the State's opening statement. Given the strength of the State's case, we cannot say the verdict would have been different without the improper comments.

We add, however, the State assumes a risk of reversal when it makes a first person opening statement like the one in this case.

## III. JURY INSTRUCTIONS

### A. IPI Criminal 3d No. 11.66

Prior to trial, the State made a motion under section 115—10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115—10 (West 1998)) to admit Fox's testimony about the statement R.J. made to her when R.J. returned home the day of the assault. The trial court held a hearing and concluded the statements were admissible under both section 115—10 and the spontaneous declaration exception to the hearsay rule. At trial, Fox testified to R.J.'s statements. The trial court did not give an instruction to the jury, as required under section 115—10, informing the jury that it should consider R.J.'s age and maturity in assessing the weight and credibility to be assigned to the hearsay statements. Illinois Pattern Jury Instructions, Criminal, No. 11.66 (3d ed. 1992) (hereinafter IPI Criminal 3d) is the pattern instruction that tracks the language of the statute.

Richmond contends he was denied his rights to due process and

trial by jury when the trial court failed to give IPI Criminal 3d No. 11.66. This error, Richmond says, was compounded by the trial court's failure to include in IPI Criminal 3d No. 1.02 age as a factor the jury could consider in evaluating the credibility of R.J.'s testimony.

Richmond admits he failed to tender the appropriate instruction to the trial court. He also acknowledges his failure to raise the issue in his posttrial motion. Richmond contends we should nonetheless consider the issue under the doctrine of plain error. Alternatively, Richmond contends he was denied effective assistance of counsel by his counsel's failure to tender the appropriate instruction and preserve the issue in the posttrial motion.

■■ Section 115—10 allows for the admissibility in certain circumstances of out-of-court statements by an alleged victim of sexual acts who is under the age of 13. Section 115—10(c) provides in relevant part:

> "(c) If a statement is admitted pursuant to this Section, the court shall instruct the jury that it is for the jury to determine the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, *** the nature of the statement, the circumstances under which the statement was made, and any other relevant factor." 725 ILCS 5/115—10 (West 1998).

IPI Criminal 3d No. 11.66 tracks the language of section 115—10(c). *People v. Williams*, 193 Ill. 2d 306, 356, 739 N.E.2d 455 (2000).

*People v. Williams* is instructive here. In that case, the trial court held statements of a child were admissible under both section 115—10 and the spontaneous declaration exception to the hearsay rule. However, at trial, the court did not give IPI Criminal 3d No. 11.66. On appeal, the defendant contended the failure to give IPI Criminal 3d No. 11.66 amounted to reversible error. The defendant admitted he failed to properly preserve the issue for review by not tendering the appropriate instruction or by objecting to the trial court's failure to give the instruction. But the defendant contended the error was plain error. The supreme court held there was no error: "IPI Criminal 3d No. 11.66 is not required when statements are admitted under the spontaneous declaration exception." *Williams*, 193 Ill. 2d at 358.

■ Here, as in *Williams*, the trial court found the statements also were admissible under the spontaneous declaration exception to the hearsay rule. While it would have been better practice to give the jury IPI Criminal 3d No. 11.66, failure to do so does not rise to the level of error.

The jury was provided with the following instruction based on IPI Criminal 3d No. 1.02, which stated:

"Only you are the judges of the believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias, or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case."

Although the insertion of the words "his age" after "opportunity to observe" would have been appropriate given the facts in this case, this omission did not deprive defendant of a substantial right. See *People v. Booker*, 224 Ill. App. 3d 542, 556, 585 N.E.2d 1274 (1992) (giving the "standard instruction[, which] advised the jurors to consider the witness' ability and opportunity to observe," implied that the jury should consider age and rendered the failure to give IPI Criminal 3d No. 11.67 (Supp. 1989) (now IPI Criminal 3d No. 11.66) harmless).

■■ Richmond's contention that he was denied effective assistance of counsel also fails. To succeed on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was so seriously deficient as to fall below an objective standard of reasonableness and that the deficient performance so prejudiced him as to deny him a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). To establish prejudice, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Metcalfe*, 202 Ill. 2d 544, 562, 782 N.E.2d 263 (2002). The defendant's contention may be disposed of on the ground that he suffered no prejudice from the alleged error without determining whether his counsel's performance was deficient. *Metcalfe*, 202 Ill. 2d at 562.

■■ Given the strength of the State's case, we cannot say the result of the proceeding would have been any different absent defense counsel's alleged mistakes. Richmond's contention of ineffective assistance of counsel fails. See *Booker*, 224 Ill. App. 3d at 556 (no ineffective assistance of counsel where the defendant was not prejudiced by the use of an instruction based on IPI Criminal 2d No. 1.02 and the omission of IPI Criminal 2d No. 11.67 (Supp. 1989)).

### B. IPI Criminal 3d No. 3.06—3.07

At trial, the State admitted evidence of a statement alleged to have been made by Richmond. Defense counsel cross-examined Rosenblum about whether he had videotaped the confession or given Richmond the option of writing out the statement himself or having the statement tape-recorded. Defense counsel cross-examined Bradley

about whether Richmond's statement was tape-recorded, video-recorded, or recorded by a court reporter. In closing argument, defense counsel argued Richmond did not make the statement attributed to him.

At the close of the evidence, the trial court gave the following instruction to the jury, based on IPI Criminal 3d No. 3.06—3.07:

"You have before you evidence that the defendant made statement [sic] relating to the offense charged in the indictment. It is for you to determine what weight should be given to the statements. In determining the weight to be given to a statement, you should consider all of the circumstances under which it was made."

During deliberations, the jury submitted a note to the court in which it asked whether Richmond was given an opportunity to write out his own statement. The court instructed the jury to consider the evidence it had received.

Richmond contends the trial court erred when it failed to include in the instruction that it was for the jury to determine whether the defendant made the statement. Richmond says he was prejudiced by this error as evidenced by the jury's question to the court. The State contends Richmond forfeited review of this issue by failing to properly raise it in his posttrial motion. We disagree with the State.

■ At the instruction conference, Richmond specifically objected to this instruction on the basis that it improperly omitted the portion instructing the jury to determine whether the defendant made the statement. In his posttrial motion, Richmond contended the court "erred when overruling defendant's objections to giving *** People's Instruction 10, I.P.I. 3.06—3.07." This was sufficient to preserve the issue for appellate review. See *Nieves*, 193 Ill. 2d at 524.

■ A defendant is entitled to have the jury instructed on his theory of the case if there is some foundation for the instruction in evidence. *People v. Simms*, 192 Ill. 2d 348, 412, 736 N.E.2d 1092 (2000). If there is any such evidence supporting the use of the instruction, the trial court abuses its discretion in refusing the instruction. *People v. Crane*, 145 Ill. 2d 520, 526, 585 N.E.2d 99 (1991).

IPI Criminal 3d No. 3.06—3.07 reads:

"You have before you evidence that [(the) (a)] defendant made [a] statement[s] relating to the offense[s] charged in the [(indictment) (information) (complaint)]. It is for you to determine *[whether the defendant made the statement[s], and, if so,]* what weight should be given to the statement[s]. In determining the weight to be given to a statement, you should consider all of the circumstances under which it was made." (Emphasis added.) IPI Criminal 3d No. 3.06—3.07.

The committee notes to the rule state that the italicized material should be omitted only where "the defendant admits making all the material statements attributed to him." IPI Criminal 3d No. 3.06—3.07, Committee Note. Several Illinois cases have held there is no error in omitting this phrase when the defendant does not deny making the statement. See, *e.g.*, *People v. Ramos*, 318 Ill. App. 3d 181, 188, 742 N.E.2d 763 (2000); *People v. Moore*, 294 Ill. App. 3d 410, 417, 689 N.E.2d 1181 (1998); *People v. Garner*, 248 Ill. App. 3d 985, 992, 618 N.E.2d 753 (1993). We do not read those cases as holding the defendant must take the stand to deny making the statement.

■ We believe defense counsel's cross-examinations of Rosenblum and Bradley could support the inference argued by defense counsel before the jury—all or part of Richmond's statement was fabricated.

During the cross of Rosenblum:

"Q. You did not take a video statement of Mr. Richmond, correct?
A. That's correct.
Q. *** [Y]ou didn't give Mr. Richmond the option of writing it himself, did you?
A. No, sir.
Q. In his own words, right?
A. No, sir.
Q. And in his own handwriting, correct?
A. No, sir, I did not. I wrote out the statement.
***
Q. But it was not verbatim?
A. Correct."

During the cross-examination of Bradley, defense counsel again established Richmond did not write the statement and the statement was not tape-recorded or video-recorded. Bradley was asked:

"Q. The only 2 persons to witness this supposed statement were you, police officer, Mr. Rosenblum and [*sic*] Assistant State's Attorney, correct?
A. That's correct."

We conclude the trial court erred when it overruled Richmond's objection to the instruction. While the inference drawn by defense counsel rested on a thin foundation, it contained enough vitality for presentation to the jury.

Any error in the instruction, however, was harmless. Even without Richmond's confession, the State's penis-to-anus case was extremely strong, consisting of R.J.'s unimpeached testimony, Fox's testimony about R.J.'s statement immediately after the incident, medical evidence showing a tear in R.J.'s anus, and Dr. Anand's opinion testimony that the tear was consistent with penetration by a penis. Moreover, the jury's question, if anything, revealed the jury was

considering the circumstances under which the statement was made.[2] Had the jury been given the proper instruction, the result of the trial would not have been different. *People v. Kirchner*, 194 Ill. 2d 502, 557, 743 N.E.2d 94 (2000) (an error in a jury instruction is harmless where the result of the trial would not have been different had the jury been properly instructed).

## IV. SENTENCING

Richmond next contends the trial court abused it discretion in sentencing him to 30 years' imprisonment. He asks us to reduce the sentence to 10 years' imprisonment, a sentence that would better reflect his age, personal history, and rehabilitative·potential, but still sufficient to adequately punish him.

■ Sentencing decisions are entitled to great weight and deference. *People v. Latona*, 184 Ill. 2d 260, 272, 703 N.E.2d 901 (1998). It is a function of the trial court to balance relevant factors and make a reasoned decision as to the appropriate sentence in each case. *Latona*, 184 Ill. 2d at 272-73. Absent an abuse of its discretion, we should not substitute our judgment for that of the trial court. *People v. Jones*, 323 Ill. App. 3d 451, 460, 752 N.E.2d 511 (2001).

In mitigation, Richmond presented evidence of his age at the time of the crime (17), his good character, and his ties to the community. He also presented testimony that he was a volunteer at an organization dedicated to helping children and assisted elderly people in his neighborhood. His sister testified he regularly baby-sat her children and they missed him. Richmond also expressed how sorry he was for what happened to R.J.

In aggravation, the State asked the court to consider the physical injury suffered by R.J. and her young age. Evidence before the court also showed Richmond was found delinquent in 1996 and again in 1997 for unlawful use of a weapon and possession of a firearm. The State also noted that based on the presentence investigation report, Richmond has a 20-month-old child with a 17-year-old girl. This, the State argued, showed Richmond had sex with an underaged girl. The State also pointed to evidence that Richmond consumed alcohol in jail. A victim impact statement written by Fox also was introduced.

■ At the close of the hearing, the court said it considered all the evidence presented in aggravation and mitigation and sentenced Richmond to 30 years' imprisonment on the penis-to-anus conviction.

---

[2]We note the jury's question about whether Richmond was given the opportunity to write out his own statement was answered during the cross-examination of Rosenblum. The jury was provided with the transcript of Rosenblum's testimony upon request.

The sentence imposed fell within the statutory range. See 720 ILCS 5/12—14.1(b) (West 1998) (violation of subsection (a)(1) is a Class X felony); 730 ILCS 5/5—8—1(a)(3) (West 1998) (the standard range for a Class X felony is 6 to 30 years' imprisonment).

We find the trial court did not abuse its discretion in sentencing Richmond to 30 years' imprisonment.

CONCLUSION

For the foregoing reasons, we reverse Richmond's conviction based on contact between his penis and R.J.'s vagina and the accompanying 60-year prison sentence (count II). We affirm Richmond's conviction based on contact between R.J.'s anus and Richmond's penis and the accompanying 30-year prison sentence (count III).

Reversed in part; affirmed in part.

HALL, J., concurs.

JUSTICE HOFFMAN, specially concurring:

I concur with the result reached by the majority in this case and also with its well-reasoned analysis of each of the relevant issues, save one. I write separately to register my disagreement with the majority's conclusion that the trial court erred when it failed to include within its instruction based upon Illinois Pattern Jury Instructions, Criminal, No. 3.06—3.07 (3d ed. 1996) (hereinafter IPI Criminal 3d No. 3.06—3.07) the phrase advising the jury that it was to determine whether the defendant had made the statement attributed to him.

IPI Criminal 3d No. 3.06—3.07 reads as follows:

"You have before you evidence that [(the) (a)] defendant made [a] statement[s] relating to the offense[s] charged in the [(indictment) (information) (complaint)]. It is for you to determine [*whether the defendant made the statement[s], and, if so,*] what weight should be given to the statement[s]. In determining the weight to be given to a statement, you should consider all of the circumstances under which it was made." (Emphasis added.)

As noted by the majority, the instruction given in this case omitted the italicized phrase. The committee note following the instruction states that the phrase is to be "deleted only when the defendant admits making all the material statements attributed to him." IPI Criminal 3d No. 3.06—3.07, Committee Note. However, this court has consistently held that the instruction is sufficient without inclusion of the italicized phrase in circumstances where the defendant presents no evidence that he did not make the statement. See *People v. Ramos,*

318 Ill. App. 3d 181, 188, 742 N.E.2d 763 (2000); *People v. Moore*, 294 Ill. App. 3d 410, 417, 689 N.E.2d 1181 (1998); *People v. Garner*, 248 Ill. App. 3d 985, 992-93, 618 N.E.2d 753 (1993); *People v. Lee*, 151 Ill. App. 3d 510, 530, 502 N.E.2d 399 (1986); *People v. Fleming*, 103 Ill. App. 3d 194, 198, 431 N.E.2d 16 (1981).

Although the majority acknowledges this court's holdings in *Ramos*, *Moore* and *Garner* and the fact that the defendant in this case did not deny making the statement attributed to him, it nevertheless finds that the trial court erred, albeit harmlessly, in failing to include the underlined phrase it its instruction to the jury. In support of its finding in this regard, the majority references certain questions asked by defense counsel during his cross-examination of Rosenblum and Bradley and concludes that the jury might have inferred that all or part of the defendant's statement was fabricated. I disagree.

Defense counsel was able to get Rosenblum to acknowledge that the defendant's statement was not videotaped, that the defendant was not offered the option of writing the statement himself, and that the statement was not recorded verbatim. Bradley acknowledged that only he and Rosenblum witnessed the statement. I fail to see, however, how these answers could support an inference that the defendant's statement was fabricated.

A jury is permitted to infer facts only if the inference is a rational one. Probability is the test of rationality. A jury is not permitted to engage in guess, speculation or conjecture. See *Consolino v. Thompson*, 127 Ill. App. 3d 31, 34, 468 N.E.2d 422 (1984), citing James, *Sufficiency of the Evidence and Jury-Control Devices Available Before Verdict*, 47 Va. L. Rev. 218, 221-22 (1961). To conclude, based solely on the cross-examination of Rosenblum and Bradley, that the defendant's statement was fabricated would be nothing more than speculation. Their testimony simply could not, standing alone, support a conclusion that it is probable that the statement was fabricated in whole or in part.

I agree with the majority when it states that *Ramos*, *Moore*, and *Garner* do not stand for the proposition that a defendant must take the stand and deny making the statement attributed to him before he is entitled to have the underlined portion of the instruction included in the court's charge to the jury. I do not, however, subscribe to the proposition that innuendoes and insinuations, wholly unsupported by any evidence, are sufficient to entitle a defendant to an instruction containing the phrase at issue.

In this case, the State's evidence that the defendant made the statement was uncontradicted. The facts that it was not videotaped, not recorded verbatim, and not in the defendant's own handwriting

are certainly circumstances that the jury should consider in determining the weight to be given to the statement, but these facts, either individually or collectively, hardly constitute evidence supporting a reasonable inference that the statement was fabricated.

For these reasons, I find no error in the instruction given by the trial court in this case.